UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jeffrey P.,[1]

        Plaintiff,

v.

Kilolo Kijakazi,

        Defendant.

Case No. 22-cv-1655 (DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jefferey P. ("Plaintiff") seeks judicial review of a final decision ("Decision") by the Commissioner of Social Security ("Commissioner") that denied his application for disability insurance benefits ("DIB") ("Decision"). This matter is presented for decision by the parties' cross-motions for summary judgment.[2] Finding that substantial evidence supports the Decision, the Court grants the Commissioner's motion for summary judgment (ECF No. 16) and denies Plaintiff's motion for summary judgment (ECF No. 12).

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including entry of the final judgment.

## BACKGROUND

**I.      Plaintiff's Claim**

Plaintiff applied for DIB on October 30, 2019. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 84–85.)[3] At that time he was a 47-year-old man who previously worked as an administrative assistant, a store manager, and a sales associate. (R. 25, 85.) Plaintiff originally alleged a disability onset date of May 31, 2017 (*see* R. 60), but amended the onset date to June 6, 2019 at his administrative hearing. (*See* R. 13.) Plaintiff alleged he was disabled as the result of: depression; bi-polar disorder II; anxiety; sleep apnea; diabetes type II; high blood pressure; left hip pain from sitting; and a right knee brace for pain. (R. 61.)

**II.     Regulatory Background**

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

---

[3] The Social Security administrative (R.) is filed at ECF No. 9. For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page number.

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." *Id*. § 416.920(a)(4)(i). The claimant must then establish that he has a severe, medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three, the Commissioner must find that the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). *Id.* § 416.920(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## III.   Procedural History

The Commissioner denied Plaintiff's application for DIB initially (*see* R. 60–71) and on reconsideration. (*See* R. 113–137.) On June 21, 2021, at Plaintiff's request (R. 160–61), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application. (R. 33–59.) Plaintiff

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" impacted. See 20 C.F.R Part 404, Subpart P, App. 1.

3

and a vocational expert ("VE") testified at the hearing. (*Id.*) Plaintiff's attorney also appeared and proffered argument. After the hearing, the ALJ determined that Plaintiff had the following severe impairments: obesity, eating disorder, major depressive disorder, bipolar disorder, personality disorder, and generalized anxiety disorder. (R. 16.) The ALJ also found Plaintiff had the following non-severe impairments: diabetes mellitus, obstructive sleep apnea, hypertension, and hyperlipidemia. (*Id.*)

The ALJ concluded at step three that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing. (R. 17–19.) The ALJ then determined that Plaintiff:

> has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except occasionally kneel, crawl, and crouch, simple routine tasks, occasional interaction with coworkers supervisors, no tandem tasks with coworkers, and no interaction with the general public.

(R. 19.) After thoroughly cataloging the mental and physical health evidence in the record, and based on the VE's testimony, the ALJ determined that Plaintiff was unable to return to his previous employment. (R. 25-26.) But based on Plaintiff's age, education, work experience, and RFC, and relying on the VE's testimony, the ALJ found there were at least 230,000 jobs in the national economy that Plaintiff could perform, including representative occupations such as: hand packager (77,000 jobs nationally), machine packager (89,000 jobs nationally), and meat clerk (64,000 jobs nationally). (R. 19–26.) The ALJ thus concluded Plaintiff was not disabled. (R. 27.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1–4), and this lawsuit followed.

## DISCUSSION

Plaintiff raises several challenges to the ALJ's decision, arguing that: (1) the ALJ failed to fairly develop the record at step three of the sequential analysis by not having a medical expert

at the hearing or sending interrogatories to medical experts, and by discrediting a treating physician's opinion; (2) the ALJ failed to properly consider evidence of Plaintiff's mental impairments, such that the RFC determination is not supported by substantial evidence; and (3) the ALJ asked the VE an incomplete hypothetical, such that the jobs the VE identified cannot constitute substantial evidence to support the ALJ's determination.  For the reasons set forth below, the Court upholds the ALJ's determination and denies Plaintiff's motion.

**I.   Standard of Review**

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high." *Id.*  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

**I.   The ALJ's Analysis of Plaintiff's Medical Impairments**

Plaintiff argues the ALJ committed reversible error in evaluating the severity of Plaintiff's mental health impairments.  (ECF No. 13 at 7.)  Plaintiff points out that he lives in a group home, has been fired from previous jobs, and has received mental health treatment for many years.  (*Id.* at 7-10.)  Plaintiff specifically contends the ALJ erred in assessing the evidence with respect to his mental health impairments by failing to fully and fairly develop the medical record with respect to her analysis at step three.  (*Id.* at 15.)  Plaintiff argues the ALJ should have had a medical expert

5

testify at the hearing or sent interrogatories to a medical expert. (*Id.* at 15-17.) Plaintiff further argues the ALJ improperly evaluated the opinion of Dr. Jeffrey Kearney, who conducted cognitive and neuropsychological testing and an evaluation of Plaintiff in May 2020, as "not persuasive". (*See* R. 22.)

At step three, a claimant has the burden of proving his impairment meets or medically equals a listed impairment. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citation omitted). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Id.* (citation omitted). "To establish equivalency, a claimant 'must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Id.* at 594 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

Though an ALJ must fully and fairly develop the record in social security matters, "an ALJ is not required to obtain medical expert evidence or medical support staff input prior to making a step 3 finding that a claimant's medical impairment does not medically equal a listed impairment if the ALJ believes that the evidence does not reasonably support a finding that the claimant's impairment medically equals a listed impairment." *Roffle v. Saul*, 4:19-cv-02672 (NCC), 2021 WL 1143886, at *7 (E.D. Mo. Mar. 25, 2021) (citing Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306 (Mar. 27, 2017)). In arguing that, as a necessary part of the ALJ's duty to fully and fairly develop the record, "it was incumbent on the ALJ to consult with a medical expert as to whether a listing equivalency was present[,] … Plaintiff has relied entirely on a somewhat contradictory argument that places a burden of soliciting or producing evidence on the ALJ, while wholly ignoring the requirement that the claimant put forth 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Laudenbach v. Colvin*, 14-cv-771 (ADM/JJK), 2015 WL 853650, at *6 (D. Minn. Feb. 26, 2015) (rejecting argument that ALJ bears

the burden) (quoting *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir.1995) (emphasis in *Marciniak*)).

Plaintiff also argues the ALJ failed to properly consider his mental health impairments because she improperly rejected Dr. Kearney's opinion regarding the impact of Plaintiff's mental health conditions on his ability to maintain employment. Following his testing and evaluation of Plaintiff, Dr. Kearney found:

> Given [Plaintiff's] current symptomology, it seems unlikely that he could be employed. Hopefully, with continued aggressive mental health treatment he might again be a candidate for employment in the future. Quite clearly, he is very bright with many strengths.

(R. 22, quoting R. 935.) For the reasons given below, the Court finds the ALJ properly supported her determination regarding the persuasiveness of Dr. Kearney's opinion.

Following changes to the applicable regulations, an ALJ is no longer required to defer to a treating or examining medical provider so long as she applies certain factors in determining the persuasiveness of the provider's opinion. *See* 20 C.F.R. § 404.1520c(a). These factors are:

(1) Supportability
(2) Consistency
(3) Relationship with the claimant (which includes)
    (i) Length of the treatment relationship
    (ii) Frequency of examinations
    (iii) Purpose of the treatment relationship
    (iv) Extent of the treatment relationship
    (v) Examining relationship
(4) Specialization
(5) Other factors (a catch all)

*Id.* at §§ 404.1520c(a)-(c), 416.920c(a)-(c). The two most important factors for the ALJ to consider are supportability and consistency. *Id.* at § 404.1520c(b)(2).

In rejecting Dr. Kearney's conclusory statement that Plaintiff was unable to work, the ALJ first highlighted Dr. Kearney's specific findings that: Plaintiff was very bright and functioned in

the superior range of overall intellect with an IQ of 124; Plaintiff performed extremely well on neuropsychological testing; there was a discrepancy between Plaintiff's nonverbal skills and far more developed verbal intellectual skills, which was possibly premorbid in nature but also potentially exacerbated by his mental impairments; and Plaintiff's sustained concentration and cognitive processing speed were lower than expected, likely due to his mental health impairments. (R. 22.) The ALJ also noted Dr. Kearney's conclusion that he was not particularly concerned about Plaintiff having significant neuropsychological difficulties, and that inefficiencies in Plaintiff's cognitive skills were attributable to his mental health symptoms. (R. 22.) The ALJ observed that Dr. Kearney statement about Plaintiff's ability to work was conclusory and made with knowledge that Plaintiff was applying for social security benefits. (R. 22.)

Having carefully considered Dr. Kearney's specific findings, the ALJ rejected his opinion regarding the severity of Plaintiff's mental health impairments on multiple grounds, including that: (1) the opinion did not include a function-by-function analysis of Plaintiff's abilities, *see, e.g.*, *Gross v. Saul*, 4:19-cv-0504 (DGK/SSA), 2020 WL 3287945, at *2 (W.D. Mo. June 18, 2020) (finding the ALJ did not err in discounting physician's opinion, in part, because the "opinion was conclusory and not supported by a function-by-function assessment of Plaintiff's limitations"); (2) the opinion only addressed Plaintiff's functional abilities at the time of his appointment and did not reflect impairment for a twelve-month period,[5] *cf. Engel v. Astrue*, 08-cv-5069 (RHB), 2009 WL 2230921, at *4 (D.S.D. July 24, 2009) (finding substantial evidence supported the ALJ's opinion when "the record [was] devoid of an opinion from any medical provider that plaintiff was incapable of working for a twelve-month period, which is the basis for a finding of disability); (3)

---

[5] This point is particularly noteworthy since Dr. Kearney found that, with aggressive treatment, Plaintiff could participate in the workforce.

8

the opinion was inconsistent with the mental status observations of Plaintiff's counselor and medication management provider, *see Postel v. Saul*, 18-cv-2017 (MAR), 2019 WL 4720990, at *13 (N.D. Iowa Sept. 26, 2019) (finding doctor's medical opinion was unreliable, in large part, because the opinion was not consistent with "counselor's and medication managers' treatment notes"); and (4) the opinion was inconsistent with Plaintiff's conservative treatment history and daily life activities, *see Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (affirming ALJ's decision to discredit treating physician's opinion based on plaintiff's relatively conservative course of treatment).  (R. 22.)  Finally, the ALJ discredited Dr. Kearney's conclusion that Plaintiff could not work on the ground that disability is a determination reserved to the Commissioner.  (*Id.*)

In light of the ALJ's careful consideration and review of Dr. Kearney's findings and her identification of multiple reasonable and supportable grounds in determining it "not persuasive," the Court finds the ALJs determination is supported by substantial evidence in the record as a whole.  Moreover, the Court notes Plaintiff bears the burden at step three to establish he has an impairment that medically equals a Listing, *Carlson*, 604 F.3d at 593.  He does not argue he actually meets any particular Listing, and he has not directed the Court to any medical evidence suggesting the ALJ needed to solicit testimony or interrogatory responses from a medical expert to develop the record more fully.  The Court finds for these reasons that the record is fully and fairly developed and that the ALJ's determination at step three is supported by substantial evidence.

## II.     The RFC Determination

Plaintiff argues the ALJ's RFC determination is not supported because she failed to properly weigh Plaintiff's mental health evidence in two respects.  First, he argues the ALJ failed to consider his living situation.  Plaintiff lives in an adult foster home.  (R. 18.)  Plaintiff testified

9

the home's staff members clean the common areas and cook meals three times a week, making leftovers to ensure residents have enough food for subsequent days. (R. 43.) Plaintiff explained that residents can make requests, but they do not make the food or design the menu. (R. 43.) From these facts, Plaintiff asserted he and the other residents are entirely dependent on the owner of the foster home. (R. 43.) Plaintiff acknowledges that living in a foster home does not alone prove he has a medically determinable impairment. (ECF No. 13 at 9.) He instead argues it demonstrates the severity of his condition, and that his dependence on his foster home's owner should have factored into the ALJ's RFC determination. (*Id.* at 9–10.)

Second, Plaintiff argues the ALJ cherry-picked evidence about his activities of daily living in reaching her RFC determination. For example, the ALJ noted that Plaintiff "reported operating a motor vehicle, caring for his son, spending holidays with friends and family and running errands." (R. 23, citing treatment progress note at R. 757.) But Plaintiff points out the ALJ failed to acknowledge Plaintiff also reported having negative interactions with his son and his housemate when he "spoke sternly" to them. (ECF No. 13 at 10, citing the same treatment progress note.) The ALJ also highlighted that Plaintiff reported having a three-hour telephone call with a friend. (R. 23, citing R. 883.) But Plaintiff notes he also reported that he had not spoken to that friend in over a year and was not sure he wanted to reconnect with them. (ECF No. 13 at 11, citing R. 883.) The ALJ described Plaintiff as having conversations with a woman he met in February 2021. (R. 23, citing R. 1061.) But in this same document, Plaintiff reported believing he might be incorrectly thinking there is more of a connection between himself and this woman than reality suggests. (R. 1061.) The ALJ also highlighted Plaintiff's self-care activities, such as reading, playing guitar, cooking and watching television. (R. 23–24, citing R. 1056.) But in that same document, Plaintiff's therapist explained that he was having mood swings that affected his son, and that these

10

self-care activities were a means of slowing himself down. (R. 1056.) Based on these accounts of his daily life activities, the ALJ concluded Plaintiff had a robust level of interaction with others that was inconsistent with Plaintiff's allegations of isolation. (R. 24.) But based on these examples, Plaintiff argues that if the ALJ had properly considered the totality of the evidence she could not have reached this conclusion, and thus the ALJ's RFC determination is not based on substantial evidence. (R. 11–12.) In making this argument, Plaintiff does not articulate with specificity how the ALJ's RFC determination is erroneous or how this evidence should have narrowed it further.

Plaintiff bears the burden to establish his RFC, and he has not argued with any particularity what is wrong with the ALJ's RFC determination. To the extent Plaintiff argues the RFC determination is not based on substantial evidence because the above examples might have supported a narrower RFC determination, "the Court may not reverse the ALJ simply because substantial evidence supports an opposite conclusion." *Vouk v. Berryhill*, 17-cv-3257 (DWF/LIB), 2018 WL 7572494, at *6 (D. Minn. July 23, 2018) (citing *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015)). The Court may not substitute its own judgment or findings of fact for those of the ALJ, as it "must consider evidence that both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" *Milman*, 794 F.3d at 983 (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir.2011)). The Court cannot "reweigh the evidence[.]" *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (quotation and citations omitted).

Plaintiff's challenge to the ALJ's RFC determination asks the Court to do precisely that. The ALJ's decision reflects that she clearly considered both Plaintiff's status in an adult foster home (*see* R. 18–19), as well as the portions of the record Plaintiff cites in his examples. That the

11

ALJ did not weigh these portions of the record as heavily or draw the same conclusions from them as Plaintiff urges does not demonstrate a lack of substantial evidence. Having reviewed these portions of the record, the Court does not find them to be inconsistent with the ALJ's determination that Plaintiff's interactions with others exceeded the severity of the limits he alleged.

Moreover, Plaintiff does not even argue how these portions of the record compel a different RFC determination. The ALJ not only considered—but actually incorporated—limitations into the RFC reflecting Plaintiff's difficulty interacting with others, such as limiting him to "occasional interaction[s] with coworkers and supervisors, no tandem tasks with coworkers, and no interaction with the general public." (R. 19.) The portions of the record Plaintiff cites are perfectly consistent with these restrictions. The Court accordingly finds the ALJ's RFC determination is supported by substantial evidence.

### III. The VE's Testimony

Plaintiff argues that, because "the ALJ improperly determined [his RFC], the VE's responses to the ALJ's hypothetical questions do not constitute substantial evidence on which to base a denial of [his] claim for benefits." (ECF No. 13 at 18.) But this is not an argument that the ALJ committed a distinct and independent error at step five—it is an argument that the ALJ's step four error was not harmless because it resulted in an error at step five. *See, e.g.*, *Kenneth J.V. v. Kijakazi*, 22-cv-373 (KMM/DJF), 2023 WL 2394397, at *8–11 (D. Minn. Jan. 27, 2023) (finding step five determination erroneous because the ALJ asked the VE a flawed hypothetical question due to an omission from the plaintiff's RFC) (quoting *Holley v. Astrue*, 4:08-cv-04010, 2008 WL 5381313, at *4 (W.D. Ark. Dec. 22, 2008)), *report and recommendation adopted*, 2023 WL 2388696 (D. Minn. March 7, 2023). Here, the Court finds the ALJ's RFC determination is supported by substantial evidence, such that the ALJ's hypothetical question to the VE was

properly phrased. (*Compare* R. 19 & 26, *with* R. 55–56.) The Court rejects this argument accordingly.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment (ECF No. [12]) is **DENIED**;

2. The Commissioner's Motion for Summary Judgment is (ECF No. [16]) **GRANTED**;

3. The Commissioner's Decision is **AFFIRMED**; and

4. Plaintiff's Complaint (ECF No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 19, 2023               *s/ Dulce J. Foster*
                                        Dulce J. Foster
                                        United States Magistrate Judge